UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA              :
                                      :
                                      :
              - v. -                  :              S2 11 CR 121 (GBD)
                                      :
                                      :
MARK MAZER, ET AL.,                   :
                                      :
              Defendant(s).           :
------------------------------------------------------------x


**DEFENDANT LARISA MEDZON'S MEMORANDUM OF LAW IN SUPPORT OF A
JOINT MOTION FOR SEVERANCE OF LARISA MEDZON, SVETLANA MAZER
AND ANNA MAKOVETSKAYA FROM THEIR CO-DEFENDANTS**

Benjamin Brafman, Esq.
Joshua D. Kirshner, Esq.
Brafman & Associates, P.C.
*Attorneys for Larisa Medzon*
767 3rd Avenue, 26th FL
New York, NY 10017
Tel (212) 750-7800
Fax (212) 750-3906
Email: bbrafman@braflaw.com
       jkirshner@braflaw.com

# INTRODUCTION

Defendants Larisa Medzon, Svetlana Mazer, and Anna Makovetskaya (the "moving defendants") jointly move to sever their trial from the trial of their co-defendants Mark Mazer, Gerard Denault, Padma Allen, Reddy Allen, Technodyne LLC, and Dimitry Aronshtein (the "CityTime defendants") pursuant to Rule 14 of the Federal Rules of Criminal Procedure due to the unavoidable prejudicial spillover from a joint trial and judicial economy considerations.

Concerning prejudicial spillover, the moving defendants contend that the overwhelming amount of evidence that the Government intends to present against the CityTime defendants is inadmissible against the moving defendants and that evidence would spill over and unduly prejudice them. Because a jury would not be able to compartmentalize such substantial yet otherwise inadmissible evidence against the moving defendants, a joint trial would risk an unreliable jury verdict. Further, the moving defendants aver that the spillover effect could not be cured with a limiting instruction to the jury because the nature and basis of the sole charge against them—a money laundering conspiracy—are qualitatively different from the charges against the CityTime defendants.

Turning to the efficiency argument, the moving defendants maintain that a separate trial on the money laundering charge—with its anticipated limited amount of evidence—would be far shorter in time than a joint trial with the CityTime defendants. This is because a joint trial would involve substantial evidence that would be introduced solely against the CityTime defendants and which would necessitate numerous requests for limiting instructions to the jury. Moreover, the moving defendants have taken the unusual step of agreeing to stipulate to the Government's evidence of the underlying fraud and kickback schemes involving CityTime should they be granted a separate trial on the money laundering charges. Thus, unlike a months-long joint trial

consisting of evidence largely irrelevant to the moving defendants, a separate trial would last days on the sole issue of whether the moving defendants had the requisite knowledge of the illegal source of the proceeds which they allegedly laundered.

## FACTS

The forty-three page Second Superseding Indictment ("Indictment", "Ind.") before this Court alleges a "massive and elaborate scheme to defraud New York City in connection with the CityTime Project." (Ind. ¶ 10). The first eleven Counts of the Indictment document how five individuals and a multi-million dollar corporation were "primarily responsible for the CityTime Project - - exploiting their authority and influence over OPA, the primary contractor (SAIC), the primary subcontractor (Technodyne), and the subcontractors (DAS and Prime View) - - collaborated to overbill the City and otherwise defraud the City in order to illegally enrich themselves." *Id.* Though not essential to this motion, the unusually prolix Complaint and the Indictment detail the colossal and complex nature of the fraud and kickback conspiracies delineated in Counts One through Eleven.

Nestled at the tail end of this overwhelming document, the moving defendants are charged in Count Twelve of the Indictment with participating, along with Mark Mazer and Dimitry Aronshtein, in a money laundering conspiracy. To be certain, the moving defendants are not named in Counts One through Eleven, nor is there anything in the voluminous discovery produced to date which alleges they are remotely involved in the underlying fraud and kickback schemes. The moving defendants are solely charged with taking direction from Mark Mazer to "conceal the $25 million in kickbacks [Mark Mazer] received on CityTime from Dimitry Aronshtein, the defendant, and Victor Natanzon." (Ind. ¶ 66).

## LAW

Rule 14(a) allows a district court to grant severance as a matter of discretion even if joinder was proper under Rule 8. *See, e.g., United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988); *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002). The moving defendants do not quarrel that their burden in seeking such relief is a heavy one as they must demonstrate that substantial prejudice would result from a joint trial with the CityTime defendants. *See, e.g., Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir.1996); *Turoff*, 853 F.2d at 1043. However, where the evidence against the movants is so minimal in comparison to what is admissible against their codefendants, courts have not hesitated to grant such relief. *See, e.g., United States v. Gilbert*, 504 F. Supp. 565, 571 (S.D.N.Y. 1980) (granting severance for a minor participant in a securities conspiracy where the movant "made a sufficient showing of disproportionate involvement in the overall scheme to raise a substantial risk that he would be prejudiced by the gradually accumulating effect of evidence" against his co-defendant). In *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987), Judge Weinstein considered the disproportionality of the evidence common in a joint trial: "The prejudice concomitant with the case's complexity is 'particularly injurious' to defendants charged in a small proportion of the counts and who are implicated by only bits and pieces of the evidence." *Id.* at 750 (quoting *Branker*, 395 F.2d 881, 882 (2d Cir. 1968)). Moreover, "'[i]nevitable prejudice' to the peripheral defendants is caused by 'the slow but inexorable accumulation of evidence' against the major players." *Id.* (quoting *Kelly*, 349 F.2d 720, 759 (2d Cir. 1965)). "The sheer volume of such evidence against co-conspirators, especially when the prejudiced defendants sit in court for weeks or months on end without their names so much as

being mentioned, can so unbalance the scales that 'no amount of cautionary instructions could …
undo [ ] the harm…." *Id.* (quoting Kelly, 349 F.2d at 758).  Judge Weinstein also cautioned that
a trial court's limiting instructions in multi-defendant trials will be ineffective against the
scourge of prejudicial spillover evidence because jurors will be unable to remember each of
them.

This sentiment was articulated years earlier by the Second Circuit in *United States v.
Bufalino*, 285 F.2d 408, 417 (2d Cir. 1960), where the Court expressed serious doubt as to
whether a jury properly could analyze, understand and weigh the large quantity of evidence
typically at issue in a major multi-defendant trial.  The court acknowledged that even it "found
the analysis and the comparison of [witness] statements most difficult; it is virtually impossible
to keep them separately in mind and to weigh them without considerable study and without
voluminous notes and indices." Id.

In United States v. Agueci, 310 F.2d 817 (2d Cir. 1962), the Second Circuit reiterated
concerns about jurors' abilities to "compartmentalize" evidence in a multi-defendant case which
only lasted two months:

> The great problem confronting the district judge is therefore one of
> trial management.  The jury must constantly be made aware of the
> fact that there are separate individuals on trial and that each must
> be judged solely on the evidence properly admissible against him.
> The difficulties of compartmentalizing the independent evidence in
> the mass-conspiracy case, and of focusing the attention of the jury
> on that evidence before consideration may be given to hearsay, are
> so manifest that we would labor the point were we to say more.

Id. at 840.

## **ARGUMENT**

Here, the grounds for severance due to spillover prejudice are compelling.  The moving defendants are charged in a single Count of this multi-Count Indictment.  In the millions of documents turned over to date, there is no evidence that the moving defendants knew of, let alone knowingly participated in, any of the underlying fraud and kickback conspiracies. Accordingly, evidence of such activity is not admissible against the moving defendants.

Even more compellingly, in order to establish the fraud and kickback schemes, the Government will undoubtedly offer extensive evidence of these complex affairs over a nearly eight-year period.  Yet most of that testimony is not admissible against the moving defendants, both because they were entirely uninvolved in and lacked knowledge of such conduct and because their alleged money laundering activity occurred during a far more circumscribed period.  It may well be that the Government would be entitled to introduce limited evidence of the fraud and kickback conspiracies in an effort to prove that the moving defendants should have known the source of the proceeds was criminal, but the vast majority of the Government's case will be entirely irrelevant and highly prejudicial to the moving defendants.

Additionally, the Government's evidence proving the fraud and kickback schemes will not only dwarf the evidence to prove the moving defendants' involvement in a money laundering conspiracy, it will also improperly enflame the jury.  Although jurors are presumed to follow limiting instructions, common sense dictates that they are not always capable of doing so; nowhere is this truer than when acts of reckless greed and theft from a municipality are admitted at a joint trial in today's economic climate.  Thus, evidence, while inadmissible against the moving defendants, will likely have a profound influence upon the jury's deliberations on the charges against them.

Crucially, therefore, when passing upon the instant motion the Court should give paramount consideration to the moving defendant's intention, through counsel, *to concede the existence of the charged fraud and kickback conspiracies at a separate trial, including the core allegations against their relative, Mark Mazer*. Such a concession, we believe, will be of critical strategic importance in light of the anticipated strength of the evidence, not only to permit counsel for the moving defendants to establish and maintain credibility with the jury, but to shorten to no more than a few days any trial on behalf of them alone. Quite obviously, such a strategy will compromise the remaining defendants' fair trial rights and should, therefore, weigh in the balance when the merits of the instant motion are considered. Nor should the argument of "judicial economy" determine the decisions on this issue as a separate trial of the moving defendants will take days, not the many months that a trial of the remaining defendants will require.

## CONCLUSION

There are times that the Government's interest in a joint trial -- however substantial -- must yield to the very real possibility that irreparable, unfair prejudice to the accused will thereby ensue.  This is such a case.

Respectfully,

Benjamin Brafman, Esq.
Joshua D. Kirshner, Esq.
Brafman & Associates, P.C.
*Attorneys for Larisa Medzon*
767 3rd Avenue, 26th FL
New York, NY 10017
Tel (212) 750-7800
Fax (212) 750-3906
Email: bbrafman@braflaw.com
       jkirshner@braflaw.com
